UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sandra Wodzinski, | ) | Case No. 1:19-cv-01671 |
| | ) | |
| Plaintiff, | ) | JUDGE POLSTER |
| | ) | |
| -vs- | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| Social Security Administration, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

**I. Introduction**

Plaintiff, Sandra Jean Wodzinski, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Wodzinski's application for DIB be affirmed.

**II. Procedural History**

On March 21, 2016, Wodzinski filed a Title II application for a period of disability and disability benefits beginning July 31, 2015. The Commissioner of Social Security denied her application on July 29, 2016 and upon reconsideration on October 31, 2016. Wodzinski requested a hearing, which was held before an ALJ on August 23, 2018. In a written decision, the ALJ denied

1

Wodzinski's application for benefits. The Appeals Council denied Wodzinski's request for review. She now seeks judicial review pursuant to 42 U.S.C. §405(g).[1]

### III. Background

#### A. Relevant Medical Evidence

Claimant Wodzinski is a 58-year-old female who in August 2015, at age 53 and following a diagnosis of breast cancer, underwent a mastectomy and breast reconstruction followed by an additional surgery in December 2015 to reconstruct the opposite breast. Prior to her surgeries, Wodzinski worked around 30 hours a week as a deli counter clerk. Following her surgeries, Wodzinski reported to her surgeon and her primary care physician (PCP) that she was having difficulty dealing with the loss of her breast and that she felt depressed and anxious. Her doctors assured her that her feelings were typical and encouraged her to attend both individual and group therapy for breast cancer survivors. In May of 2016, Wodzinski attended her first (and only) individual counseling session with Jan Wheaton, Ph.D. at Horizons Counseling Services, Inc., who diagnosed her with "adjustment disorder with depressed mood." (Tr. of Proceedings before the Social Security Administration, ECF No. 11 at 438-445). Despite agreeing to a therapy plan, Wodzinski did not treat with Dr. Wheaton again nor did she attend further individual counseling until December of 2016.

In June 2016, Wodzinski's PCP began medically treating her depression and anxiety. From June 2016 through November 2016, Wodzinski's sole course of treatment was with her PCP who

---

[1] The Transcript of Proceedings before the Social Security Administration is located at ECF No. 11.

monitored her progress during their visits - there were seven during this time period - and adjusted her medication according to those visits. The PCP also continued to encourage Wodzinski to seek counseling to help cope with her depression.

On December 6, 2016, Wodzinski met with Constance Baker-Alden, a Licensed Independent Social Worker ("LISW") at MetroHealth Systems, who diagnosed her with "major depressive disorder" and body dysmorphic disorder and recommended follow-up appointments for treatment. (ECF No. 11 at 486). Over the next 14 months, Wodzinski met with Baker-Alden at least seven times and followed up with her PCP four times. During the January 17, 2017 visit with her PCP, Wodzinski reported that the medication and therapy were helping. (ECF No. 11 at 530). The PCP also noted that Wodzinski's "depression symptoms [were] still pretty significant" and continued the use of antidepressants. (ECF No. 11 at 533). Following her counseling session on January 18, 2018, Baker-Alden noted that Wodzinski "admits she has done nothing that [Baker-Alden] recommended that she do. …She knows she is the problem. Even her OB-GYN gave her similar suggestions. She never went to breast cancer support [group]….She has done nothing….She is depressed. She is unmotivated to do anything. She does nothing". (ECF No. 11 at 660). The mental status exam found Wodzinski to be cooperative, but distressed, depressed, anxious and labile. (ECF No. 11 at 661).

On February 28, 2018, Wodzinski had a mental health assessment update with Lori-Anne Schulte-Laird, Advanced Practice Registered Nurse-Clinical Nurse Practitioner ("APRN-CNP") at Metro Health System. Wodzinski reported that the antidepressant medications prescribed by her PCP were not working and that she remained depressed, unmotivated, and unable to sleep but has no energy. (ECF No. 11 at 665). Schulte-Laird noted that Wodzinski appeared depressed and

anxious and had poor judgment and insight and diagnosed Wodzinski with major depressive disorder and body dysmorphic disorder. (ECF No. 11 at 669-70). Schulte-Laird prescribed antidepressant and anxiety medication to treat Wodzinski's impairments.

In March of 2018, Baker-Alden retired and Wodzinski's file was transferred to a replacement therapist, Nellie Krawczynski, LISW. Wodzinski met with Krawczynski on two occasions: April 18, 2018 and May 17, 2018.[2] The April 18, 2018 meeting appears to have been a "getting to know you" session to develop rapport with Wodzinski. (ECF No. 11 at 687). Krawczynski concurred with the diagnosis of Baker-Alden that Wodzinski suffers major medical depression and body dysmorphic disorder. (ECF No. 11 at 689). She also noted that Wodzinski appeared labile, depressed, and anxious. (ECF No. 11 at 688). At the May 17, 2018 visit, Krawczynski noted that Wodzinski appeared cooperative, guarded, anxious, depressed and labile. (ECF No. 11 at 700). Wodzinski reported experiencing avolition. (ECF No. 11 at 699).

From March 2018 through June 2018, Schulte-Laird also continued to monitor Wodzinski's progress and adjust her medication accordingly. In April 2018, Wodzinski reported that although the anxiety remained persistent, she experienced some breaks in the edginess and the intensity and duration of her anxiety was lessening and better controlled. (ECF No. 11 at 680). Schulte-Laird noted that Wodzinski appeared euthymic, cooperative, and had good judgment and insight. (ECF No. 11 at 681). Schulte-Laird continued to treat Wodzinski with the use of antidepressant, anxiety, and depression medication. In May of 2018, Wodzinski reported persistent

---

[2] The medical records from Metro Health System did not include any records after May 17, 2018. Schulte-Laird, however, reports meeting with Wodzinski on June 7, 2018. (ECF Doc. 11 at 640).

4

anxiety and depression, but noted some decrease in symptoms with the new medication. (ECF No. 11 at 694). Schulte-Laird again increased the dosage of Wodzinski's antidepressant medication. (ECF No. 11 at 694).

### B. Testimonial Evidence

Wodzinski testified at the administrative hearing on August 23, 2018. (ECF No. 11 at 62-81). Wodzinski lived with her husband and two children, aged 25 at 17. She did not complete 12th grade and does not have a GED. Wodzinski testified regarding the effects of her depression in that she cannot function as she did prior to her surgery, lacks motivation to go anywhere or see anyone, is tired all the time, and is afraid to go out on her own. She stated that she doesn't like to be around people because she is embarrassed of her sadness. She explained that although several of her physicians, her family, and her counselor had encouraged her to attend group therapy to assist with her recovery, she cannot attend these sessions out of lack of motivation and fear that they would make her more depressed.

Vocational expert Bruce Holdereid also testified at the hearing. (ECF No. 11 at 81-85). The ALJ asked the VE to consider an individual of Wodzinski's age and education who had her RFC, as determined by the ALJ. The VE testified that this individual would not be able to perform Wodzinski's former work as a deli clerk, but that the individual could perform other jobs in the national economy. Upon the ALJ presenting additional limiting factors for consideration, the VE testified that there would not be any jobs for an individual who would have difficulty maintaining their concentration and attention to the point that they would be off task for 20% of the workday. Additionally, the VE testified that there would not be any jobs for an individual who was unable

to handle stress of a job to the point that the individual would be absent more than three times per month.

### C. Relevant Opinion Evidence

1. Jan Wheaton, Ph.D.

As described above, Dr. Wheaton met with Wodzinski on one occasion on May 13, 2016. Based on that visit, Dr. Wheaton diagnosed Wodzinski with adjustment disorder and depressed mood. (ECF No. 11 at 440). Dr. Wheaton noted that based on her observations, Wodzinski's depression could interfere with her ability to work and relate to others, but also stated that she could not evaluate Wodzinski's response to the recommended treatment since Wodzinski did not return. (ECF No. 11 at 441-42).

2. Charles Misja, Ph.D.

On July 15, 2016, Wodzinski attended a medical consult with Charles Misja, Ph.D. at North Coast Family Foundation. (ECF No. 11 at 446-453). Dr. Misja met with Wodziski for 60 minutes upon referral by the Ohio Division of Disability Determination for the purpose of a psychological evaluation relating to her mental disability claim. With respect to Wodzinski's behavioral health history, Dr. Misja noted that she "went to Horizons for depression but hasn't gone back because she cries through all the sessions. She stated she first became depressed after her surgery last year when '[she] realized [she's] different, [she's] not the same anymore.'" (ECF No. 11 at 448). Dr. Misja also noted that Wodzinski had been taking an antidepressant prescribed by her primary care physician. (ECF No. 11 at 448). Wodzinski reported that she: drives herself when she needs to; attended a single group therapy session; has one friend but rarely feels up to speaking with her; is socially isolated; has no personal interests or hobbies and does nothing for fun or entertainment;

6

bathes every couple of days; brushes her teeth at most once a day; is capable of managing her finances but chooses to let her husband do it; has her children do the majority of the cooking, cleaning, laundry, and household tasks; gets up when her husband gets up for work but returns to bed as soon as he leaves and remains in bed until he arrives home; and does little else other than talk to her daughter. (ECF No. 11 at 448-49). Dr. Misja noted that Wodzinski: drove herself to the interview; appeared well-groomed; cried throughout the interview and appeared in significant emotional distress; made adequate eye contact; and did not appear to exaggerate her symptoms. (ECF No. 11 at 449). Wodzinski was able to recall two of three words after five minutes. (ECF No. 11 at 450). Dr. Misja found that Wodzinski suffers from "Major Depression, Severe" and has a "great difficulty coping with [her] medical problems". (ECF No. 11 at 450).

### 3. Lori-Anne Schulte-Laird

On June 14, 2018, Schulte-Laird completed a Mental Residual Functional Capacity Assessment of Wodzinski. (ECF No. 11 at 640-42). She noted that Wodzinski first started treating at Metro Health System in December 2016 with a therapist (Baker-Alden) who conducted the first mental health assessment on Wodzinski at that time. (ECF No. 11 at 640). Schulte-Laird conducted a follow-up mental health assessment on February 28, 2018 and had monthly consults with Wodzinski thereafter. (ECF No. 11 at 640, 665). As of June 14, 2018, Schulte-Laird opined that Wodzinski continued to have significant anxiety and depression and that she would miss more than half of her scheduled workdays if placed in a work situation requiring five eight-hour workdays each week. (ECF No. 11 at 640-41). Having met with Wodzinski on a monthly basis from February through June 2018, Schulte-Laird assessed Wodzinski's mental limitations and capacities over a normal workday on an on-going basis as follows:

7

|  | Not Significantly Limited | Moderately Limited | Markedly Limited | Extremely Limited |
|---|---|---|---|---|
| The ability to remember locations and work-like procedures. |  | X |  |  |
| The ability to understand and remember very short and simple instructions. |  | X |  |  |
| The ability to carry out very short and simple instructions. | X |  |  |  |
| The ability to maintain attention and concentration for extended periods. |  |  |  | X |
| The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. |  |  |  | X |
| The ability to sustain an ordinary routine without special supervision. |  |  |  | X |
| The ability to work in coordination with or proximity to others without being distracted by them. |  |  |  | X |
| The ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. |  |  |  | X |
| The ability to interact appropriately with the general public. |  |  | X |  |
| The ability to accept instructions and respond appropriately to criticism from supervisors. |  |  | X |  |
| The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. |  |  | X |  |
| The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. |  | X |  |  |
| The ability to respond appropriately to changes in the work setting. |  |  |  | X |
| The ability to set realistic goals or make plans independently of others. |  |  | X |  |

4. Nellie Krawczynski, LISW (ECF No. 11 at 644-646)

In June 2018, Krawczynski was also asked to provide a mental residual functional capacity assessment on Wodzinski. However, given that Wodzinski had recently transferred to her care,

Krawczynski felt she could not appropriately answer the assessment questions. Krawczynski opined that Wodzinski reported significant emotional distress, but that more time was needed to adequately assess Wodzinski's capabilities.

     5. State agency opinions

In July 2016, state agency physician Carl Tishler Ph.D. reviewed Wodzinski's then available medical records and concluded that she: 1) was moderately restricted in her activities of daily living; 2) had moderate difficulty in maintaining social functioning; and 3) had moderate difficulty in maintaining concentration, persistence or pace. (ECF No. 11 at 95). Dr. Tishler opined that Wodzinski's statements regarding her symptoms, limitations, and impairments were "fully consistent" with the evidence in her file. (ECF No. 11 at 96). Dr. Tishler found that although Wodzinski had understanding and memory limitations, these limitations would moderately limit her ability to understand and remember detailed instructions but would not significantly limit her ability to remember locations and work-like procedures or to understand and remember very short and simple instructions. (ECF No. 11 at 97). He explained that Wodzinski's condition restricts her capacity for detailed or complex tasks, but that she can comprehend, remember, and carry out simple (1-2 step) and occasionally complex (3-4 step) instructions. (ECF No. 11 at 97). With respect to Wodzinski's capacity for sustained concentration and persistence, Dr. Tishler opined that her sustainability is compromised, and her concentration and pace are variable, but that she can maintain attention, make simple decisions, and adequately adhere to a schedule. (ECF No. 11 at 98). Dr. Tishler opined that Wodzinski would interact best in situations that would not require extensive interaction with others, and that she can adapt to settings in which her duties are routine

9

and predictable. (ECF No. 11 at 98). Based at least in part on Dr. Tishler's opinions, the SSA denied Wodzinski's disability claim on or about July 29, 2016.

Wodzinski requested reconsideration and on October 27, 2016, state agency physician Dr. Jennifer Swain reviewed Wodzinski's file. (ECF No. 11 at 109-13). Dr. Swain's opinions mirrored those of Dr. Tishler. Wodzinski's claim was again denied on October 31, 2016.

## IV.  The ALJ's Decision

The ALJ made the following paraphrased finding relevant to this appeal:

5. Wodzinski has the RFC to perform medium work except that she can frequently reach with dominant arm; can only perform simple routine tasks with simple short instructions; make simple decisions; have few workplace changes; no fast pace production; no tandem work; and have occasional and superficial interaction with coworkers, supervisors and the public. (ECF No. 11 at 40).

10. Considering Wodzinski's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. (ECF No. 11 at 46).

Based on her findings, the ALJ determined that Wodzinski suffered severe impairments of right breast cancer status-post mastectomy, major depressive disorder, and body dysmorphic disorder. (ECF No. 11 at 38). The ALJ found that Wodzinski's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Nonetheless, the ALJ found that Wodzinski's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (ECF No. 11 at 41). The ALJ afforded "little weight" to the opinions of Schulte-Laird and Baker-Alden and rejected Dr. Misja's opinion that Wodzinski would have difficulty showing up for work and performing adequately. After affording the state agency reviewing physicians'

opinions "considerable weight", the ALJ found that Wodzinski was not under a disability from July 31, 2015 through the date of her decision.

Wodzinski argues that this determination is not supported by substantial evidence. Specifically, she argues that although the ALJ found that Wodzinski had severe mental impairments of major depressive disorder and body dysmorphic disorder, the ALJ "did not conduct a full and fair evaluation" of her limitations and thus failed to properly gauge how her symptoms affect her ability to perform work-related activities and her attendance at work.

**V. Law & Analysis**

    **A. Standard of Review**

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers* v. *Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rogers*, 486 F.3d at 241; *Biestek* v. *Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." (citing *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971))).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones* v. *Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence

could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek*, 880 F.3d at 783 ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen* v. *Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen* v. *Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers* v. *Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer* v. *Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter,* 78 F.3d 305, 307 (7th Cir. 1996); citing *Wilson* v. *Comm. of Soc. Sec.,* 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion)); *Shrader* v. *Astrue,* No. 11-13000, 2012 WL 5383120, at \*6 (E.D. Mich. Nov. 1, 2012) (citing *Morris* v. *Sec'y of Health & Human Servs.*, 845 F.2d 326 (6th Cir. 1988) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely

12

overlooked.")). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs* v. *Comm'r of Soc.Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

Here, the ALJ determined, and Wodzinski does not challenge, that the first four parts did not entitle Wodzinski to disability benefits, "so this case turns on the fifth: if [Wodzinski's] impairment prevents [her] from doing past work, the Commissioner will consider [her] RFC, age, education and past work experience to determine if [she] can perform other work. If [she] cannot perform other work, the Commissioner will find [her] disabled." *White* v. *Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520(f)). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *Id.* (quoting *Her* v. *Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)). "To meet the burden of showing that [Wodzinski] could perform work that is available in the national economy, the Commissioner must make a finding 'supported by substantial evidence that [Wodzinski] has the vocational qualifications to perform specific jobs.'" *Id.* (quoting *Varley*

13

v. *Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). "This kind of '[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [Wodzinski's] individual physical and mental impairments.'" *Id.* (citations omitted in original).

### B. Substantial Evidence Supports the ALJ's Decision.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating these symptoms. *See, e.g., Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014); *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 821 (6th Cir. 2011). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1); *see also* Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

If the claimant's allegations are not substantiated by the medical record, the ALJ must evaluate the individual's statements based on the entire case record. The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. Beyond medical evidence, Social Security Ruling 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the

relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1046 (E.D. Wis. 2005). The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Soc. Sec. Ruling 16-3p, 2017 WL 5180304*; see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the record supports the ALJ's determination. Wodzinski testified that her symptoms prevented her from working and that her depression incapacitates her. She stated that she spends most of her days in bed or sitting in chair and staring out a window. She is not motivated to go anywhere or see anyone. (ECF No. 11 at 79). She is emotional and becomes upset and cries on a regular basis. (ECF No. 11 at 79). She testified that she cannot take herself anywhere or be around anyone and is tired all the time. (ECF No. 11 at 70). She stated that she does not attend the group therapy sessions because it would make her sadder to be around people who have also survived breast cancer. (ECF No. 11 at 75).

The ALJ found that Wodzinski's alleged symptoms satisfied the first step of the two-step test because "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (ECF No. 11 at 41). However, at the second step, the ALJ found

15

Wodzinski's statements about the severity of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (ECF No. 11 at 41). The ALJ then discussed both medical and non-medical evidence at considerable length. She detailed the evidence that led to her conclusion, including that when claimant was compliant with her medication, she reported feeling better and appeared with brighter affect and more upbeat (ECF No. 11 at 42) and that despite her complaints and "constant encouragement from medical providers, her social worker, and her husband," claimant refused to attend group therapy sessions[3] (ECF No. 11 at 43). The ALJ discussed the opinion evidence from Wodzinski's physicians and counselors. For example, the ALJ highlighted as follows:

- Wodzinski consistently appeared tearful and/or emotional during visits with her physicians.

- Wodzninski's psychologist, Dr. Wheaton, opined that she was "impaired due to depressed symptoms" during the May 13, 2016 evaluation, but also that Wodzinski appeared to have logical thought content, good impulse control, and no psychotic symptoms. Dr. Wheaton recommended continuing treatment, which Wodzinski agreed to but failed to follow through on.

- Dr. Misja noted on July 15, 2016, that Wodzinski had fair to poor judgment but that she should be able to understand, remember, and implement ordinary instructions. The ALJ rejected Dr. Misja's opinion that Wodzinski would "have great difficulty showing up for work and performing adequately" explaining that the opinion was "not fully consistent with the longitudinal medical evidence suggesting that when [Wodzinski] is medication and therapy compliant she reports improved symptoms." However, the ALJ accepted Dr. Misja's opinion that Wodzinski did not appear to have any deficits in maintaining attention and concentration and pace and would likely have minimal problems responding appropriately to supervision and coworkers in a work setting.

- The state agency physicians recognized that Wodzinski "may experience emotional problems at times" yet opined that she could follow simple instructions, concentrate,

---

[3] Although Dr. Misja notes that prior to July 2016 Wodzinski had attended a group therapy, there is nothing in the record that verifies this statement including Wodzinski's own testimony. (*See* ECF No. 11 at 75-76).

16

    maintain pace, and interact with others. The ALJ gave these opinions considerable evidence as they were "supported by the medical evidence…that claimant is able to think, communicate, care for her own needs, get along with others, and remember and follow basic instructions."

- The ALJ gave little weight to the opinion of Schulte-Laird that Wodzinski would be off-task greater that 25% of an eight-hour work day, be absent greater than half the days due to her condition, and would be "extremely limited" in her ability to sustain an ordinary routine without supervision and to maintain attention and concentration for extended periods. The ALJ stated that Schulte-Laird's opinions were not consistent with the treatment notes for the five times that Wodzinski treated with her.

- The ALJ afforded partial weight to the opinion of Krawczynski, accepting that Wodzinski had reported significant emotional distress during her (2) therapy sessions. The ALJ also noted that Krawczynski's treatment notes indicate that Wodzinski does not follow some treatment recommendations and that more time is needed for Krawczynski to form an opinion related to the areas in question.

- The ALJ afforded little weight to Baker-Alden's opinion that Wodzinski is "unable to work" because Baker-Alden is a "non-acceptable medical source" and her opinion gives no detailed limitations or explanation as to the basis for the conclusory statement.[4] The ALJ also noted that Baker-Alden's conclusion is a "subject reserved to the Commissioner[.]"

Contrary to Wodzinski's argument, the record demonstrates that the ALJ conducted a full evaluation of Wodzinski's claim by considering all the evidence and opinions presented. In concluding that Wodzinski is not disabled within the meaning of the Social Security Act, the ALJ afforded "little weight" to the opinions of Schulte-Laird and Baker-Alden and rejected Dr. Misja's opinion that Wodzinski would have difficulty showing up for work and performing adequately.

---

[4] Although Baker-Alden is not an "acceptable medical source[]," 20 C.F.R. § 404.1502; 20 C.F.R. § 404.1513(a), she is an "other source," 20 C.F.R. § 404.1513(d)(1) (eff. Sept. 3, 2013 to Mar. 17, 2017), who is entitled to consideration due to her expertise and long-term relationship with Wodzinski. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). An ALJ must consider the opinion of "other sources" and explain the weight they are afforded, even though "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted). The ALJ explained that she considered Baker-Alden's opinion but afforded it little weight given its lack of detail and conclusory nature.

The ALJ afforded the state agency reviewing physicians' opinions "considerable weight" as their conclusions that Wodzinski "' may experience emotion problems at times' yet could follow simple instructions, concentrate, maintain pace, and interact with others" is supported by the medical evidence in the record. After examining all of the evidence and opinions, the ALJ found that Wodzinski has the RFC to perform medium work except that she can frequently reach with her dominant arm; can only perform simple routine tasks with simple short instructions; make simple decisions; have few workplace changes; no fast pace production; no tandem work; and have occasional and superficial interaction with coworkers, supervisors and the public. The ALJ did not accept a more limited RFC, which included that Wodzinski would have difficulty maintaining her concentration and attention to the point that she would be off task for 20% of the workday or that she was unable to handle stress of a job to the point that she would be absent more than three times per month because the ALJ found that these limitations were not supported by the medical record. Based on Wodzinski's RFC, the ALJ determined that jobs existed in significant numbers in the national economy that she could perform.

In conclusion, the ALJ considered Wodzinski's entire record and found that the medical evidence supported the conclusion that Wodzinski was not disabled. The ALJ reviewed Wodzinski's claim under the five-step analysis set forth in 20 C.F.R. § 404.1520. Although the ALJ found that Wodzinski's "right breast cancer status-post mastectomy; major depressive disorder; and body dysmorphic disorder" were severe impairments, (ECF No. 11 at 38), and prevented Wodzinski from doing her past relevant work, the ALJ found that Wodzinski was not disabled because she was capable of performing other work that exists in significant numbers in the national economy. Substantial evidence supports the ALJ's conclusion.

**VI. Recommendation**

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Wodzinski's application for DIB be affirmed.

DATED: 8/27/2020

            __*Carmen E. Henderson*_____
            Carmen E. Henderson
            United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).